Florentino ENCINAS–SIERRAS, Appellant,

v.

UNITED STATES of America, Appellee.

No. 22720.

United States Court of Appeals Ninth Circuit.

Sept. 25, 1968.

H. Earl Rogge, Jr. (argued), Tucson, Ariz., for appellant.

Jo Ann D. Diamos (argued), Asst. U. S. Atty., Edward E. Davis, U. S. Atty., Tucson, Ariz., for appellee.

Before MADDEN,* Judge of the United States Court of Claims, and

* Senior Judge, The United States Court of Claims, sitting by designation.

HAMLEY and MERRILL, Circuit Judges.

### J. WARREN MADDEN, Judge:

In this appeal no question is presented regarding the jurisdiction of the district court or this court. The appellant, hereinafter referred to as the defendant, was convicted in the district court of the crime of unlawfully importing into the United States, from Mexico, 53.9 grams of heroin, a narcotic drug, in violation of § 174 of Title 21, United States Code. The defendant has appealed to this court, asserting that errors were committed in his trial.

On November 15, 1967, the defendant, driving an International pick-up truck arrived at the Morley Avenue Gate, the smaller of the two gates at the port-of-entry from Mexico into the United States at Nogales, Arizona. United States Customs Inspector Fellars and United States Customs Port Investigator Turner saw the defendant in the truck. Turner caused the truck to stop, and took the defendant into the Customs building where he left him in Fellars' charge. Turner went out to move the truck to a location where it would not interfere with traffic, and to search it. He found nothing relevant in the truck. In the meantime, Fellars had frisked the defendant, and had had him empty his pockets. Upon Turner's return to the building, he asked the defendant if he was bringing anything into the United States from Mexico, and the defendant said he was not.

Turner then told the defendant that he was going to search his person, and, with Fellars, took the defendant into another room. Turner asked the defendant to drop his trousers, which the defendant did. Turner smelled a distinct odor which he recognized. Turner asked the defendant to drop his undershorts. The defendant snapped the elastic waistband of his undershorts a couple of times but did not drop them until Turner had repeated his direction, whereupon the defendant dropped his undershorts, and disclosed a piece of white paper in them.

In the paper were two contraceptives, one of which contained nearly two ounces of pure heroin. The defendant was arrested, the heroin was seized, and was introduced in evidence at the defendant's trial.

The defendant, at his trial, testified in his own behalf. He said he had, some months before, been working as a bartender at a bar in Nogales, Mexico, where one of his customers for some three months was one Pete or Pedro Martinez; that on the day of the events recited above the defendant met Martinez, who was with another man called Johnny, or Johnny Grant, on the street in Nogales, Mexico; that Martinez asked him to carry a package for him across the line into the United States, concealed in the defendant's undershorts, for which expected service Martinez paid him $5.00 and loaned him a pick-up truck. Martinez directed the defendant to drive the truck to a specified location in Nogales, Arizona and wait there for Martinez' friends to appear and accept the package. The defendant testified that he had received the package from Martinez only some ten minutes before he was arrested, and that he did not know that the package contained heroin.

It appeared from the conferences between the court and counsel, out of the hearing of the jury, that Investigator Turner had been told by an informer, between the time that the defendant had accepted Martinez' commission to carry a package into the United States, and the time when the defendant appeared in the pick-up truck at the Customs Building, that someone would come to the Morley Avenue Gate who would, or might, be carrying contraband. The defendant's counsel requested the court to permit him, when the trial before the jury was resumed, to question Turner and learn the identity of the informer. Turner was questioned by the court, and answered that his informer was not Pete or Pedro Martinez and was not Johnny Grant, nor anyone who fitted the description of Johnny Grant. The court then sustained the Government's objection to

the disclosure of the identity of its informer, holding that that information was immaterial to the issue or issues in the case.

We quote the "summary of argument" which appears in the brief of the defendant's counsel.

"* * * Appellant's basic contentions at trial were that he had no knowledge of the contents of the package he transported and that he was entrapped into committing the acts constituting the offense for which he was convicted. His argument here is that the Trial Court, in restricting his cross-examination of government witnesses, precluded him from establishing further evidence upon his defense, and that the Trial Court erred in failing to submit an instruction on entrapment under the evidence produced at the trial."

■ No evidence of entrapment was produced by the defendant at the trial. The defendant testified to what happened when he met Martinez and Johnny Grant on the street. So far as the defendant's testimony shows, Johnny took no part whatever in the conversation between Martinez and the defendant. He therefore did not entrap the defendant. Martinez did not use any pressure, did not implore the defendant to undertake the unusual mission of carrying a package, concealed in his undershorts across the border. He merely offered him $5.00 to do the errand for him. Besides, there is no suggestion in the case that Martinez had any connection with the government.

■■ In the circumstances, compelling the government to disclose the identity of the actual informant would have accomplished nothing useful to the defendant, but would have destroyed the usefulness of the informer to the government. The benefit of disclosure would have accrued, not to the defendant, but to those who in the future might desire to export narcotics from Mexico to the United States at this port-of-entry. The district court was right in ruling that the disclosure would have been immaterial. The actual informant did not entrap the defendant. According to the defendant's testimony, the actual informant was not even present, and certainly had no part in making the arrangements for the carriage of the heroin across the border.

The district court, as the courts regularly do, realized the importance of the government's privilege of not unnecessarily disclosing the identity of informers, and refused to require it. The Supreme Court of the United States in Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1937) said:

"* * * We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors."

■ A factor stressed by the dissenting justices in McCray v. State of Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967), viz. that refusal to disclose may prevent the arrested or searched person from proving, by calling the informer as a witness, that he had not given reliable information in the past, and that therefore the arrest or search was without probable cause, is not present in this case. The search was a "border search", and no probable cause was required to justify it, or to make admissible the evidence discovered by it.

We do not see how evidence which the informer, if his identity has been disclosed, might have given, could have been useful to the court or jury in deciding whether or not the defendant was aware of the contents of the package which he carried across the border. The defendant testified that he was not aware of the contents. The informer would have known nothing about the state of mind of the defendant.

■■ Since there was no evidence of entrapment, the district court was right in refusing to give an instruction on that subject. It would have served only to confuse the jury. As to the defendant's knowledge of the contents of the package, that was a question of fact for the jury. The jury found, from the circumstances of the transaction, that the defendant did have knowledge.

Finding no error, we affirm the judgment.