William Clayton PIERCE, Appellant,

v.

UNITED STATES of America, Appellee.

No. 25236.

United States Court of Appeals Fifth Circuit.

July 1, 1969.

Rehearing Denied Aug. 20, 1969.

Jerald David Mize, Houston, Tex., for appellant.

James R. Gough, Asst. U. S. Atty., Houston, Tex., for appellee.

Before COLEMAN and GODBOLD, Circuit Judges, and RUBIN, District Judge.

RUBIN, District Judge:

The defendant, Pierce, was convicted on two counts of passing and selling counterfeit money,[1] and sentenced to a term of ten years. Appealing, he complains that the trial judge improperly refused to charge the jury on entrapment, that the government failed to disclose the address of a witness about whom he inquired in pre-trial proceedings, that the government failed to produce earlier than it did the transcription

1. In violation of 18 U.S.C. § 472.

of a government agent's report concerning statements by defendant, and that he did not receive a fair trial as a result of the conduct of the Assistant United States Attorney who handled the prosecution.

## I. ENTRAPMENT—THE FACTS

The principal witness for the government was a Secret Service agent. The agent induced a third person, who was suspected of passing counterfeit bills, to introduce him to Pierce by promising the third person favorable consideration by the United States Attorney's Office. After the agent met Pierce, he began a lengthy series of conversations in an attempt to arrange for the purchase of a quantity of counterfeit money.

The undercover agent initiated the conversations and persisted in them over a period of several months. During this time, he telephoned Pierce a total of thirteen times long distance, made two collect calls that Pierce refused, and spoke to Pierce eight to ten times by local telephone. He also saw Pierce several times at a garage where Pierce engaged in rebuilding wrecked cars. The agent's uncontradicted testimony was that, from the time of the first overture, Pierce was trying to work out a sale of the counterfeit product. Pierce purported to be a broker acting on behalf of undisclosed principals who were themselves the manufacturers. He represented that his principals were skittish. The agent initially tried to buy a small amount of counterfeit money but, although Pierce indicated willingness to do business, each offer eventually proved fruitless because on each occasion he reported some difficulty with the manufacturers. After a time, the agent increased the amount of his offer, and Pierce then became "very receptive."

As a result of further conversations, Pierce arranged to deliver $10,000 in counterfeit $20 bills to the agent at an airport in exchange for $3,500 in genuine currency. An arrest was made in the airport following the exchange.

The government also arrested one Joseph D. ("Red") Holt and charged him with conspiring with Pierce to pass counterfeit money. Holt was acquitted on the conspiracy charge and the court then dismissed that count as to Pierce. The defendant's theory is that the government "attempted to get Red Holt through Mr. Pierce and in the process entrapped Mr. Pierce into committing a crime." Pierce did not take the stand, and only the government's witness testified with respect to these negotiations.

## II. ENTRAPMENT—PRINCIPLES APPLICABLE

■ Certain types of criminal activity are consensual and covert. Hence they are virtually undetectable without the use of a government agent or an informer. Narcotics peddlers, brokers of counterfeit currency, transporters of prostitutes across state lines, and gamblers employing interstate facilities to transmit bets all do business clandestinely. Their victims are willing, sometimes eager, accomplices. Their crimes are likely to go unchecked unless the government can itself approach a suspect to offer him the opportunity to commit a crime and thus give evidence of his guilt. Hence, "[i]t is well settled that the fact that officers or employees of the government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution. Artifice and stratagem may be employed to catch those engaged in criminal enterprises." Sorrells v. United States, 1932, 287 U.S. 435, 441, 53 S. Ct. 210, 212, 77 L.Ed. 413.

■■ But no one should be convicted of a crime if he was either an innocent seduced by a government agent or one whose resistance was overcome. The government must not lead astray by persuasion or proffered delight even those who had some criminal instincts but "who would normally avoid crime and

through self-struggle resist ordinary temptations." [2]

■■ The United States Supreme Court therefore recognized thirty-six years ago that a person charged with committing a federal crime could successfully defend himself, notwithstanding his commission of acts that would otherwise constitute criminal conduct, if he could show entrapment.[3] Sorrells v. United States, 1932, 287 U.S. 435, 53 S. Ct. 210, 77 L.Ed. 413; Sherman v. United States, 1958, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848; Masciale v. United States, 1958, 356 U.S. 386, 78 S.Ct. 827, 2 L.Ed.2d 859. See also Osborn v. United States, 1966, 385 U.S. 323, 87 S.Ct. 429, 17 L.Ed.2d 394. A majority of the Court in the *Sorrells* case viewed entrapment as being implicitly excepted by Congress from the statutory definition of any crime. A defendant who has been entrapped has not committed the crime proscribed by Congress. Hence, the question of entrapment goes to his guilt or innocence of the offense charged and is to be resolved by the jury.[4]

■■ But even in a criminal prosecution the fact that an issue, if controverted, is for the jury does not require the judge to submit it when a defendant is merely attempting to cloud the minds of the jurors with irrelevancies. There must first be evidence sufficient at least to raise the issue and justify its consideration.[5] Of course, once there is such evidence it is the function of the jury to weigh it, and the judge cannot refuse to submit the issue merely because he thinks that the defense has little merit.

In this respect, entrapment is no different from any other issue in a criminal prosecution. Difficulties do arise, however, when, as here, courts attempt to determine when the evidence relative to entrapment is sufficient to require the submission of the issue to the jury.

Judge Learned Hand set forth the classic formulation of the problem in United States v. Sherman, 2 Cir. 1952, 200 F.2d 880, as presenting two questions of fact: "(1) did the agent induce the accused to commit the offense charged in the indictment; (2) if so, was the accused ready and willing without persuasion and was he awaiting any propitious opportunity to commit the offense." 200 F.2d at 882.[6]

This Circuit has also considered entrapment as involving two issues, each to be considered separately. Following Judge Hand's opinion in *Sherman, su-*

---

2. Sherman v. United States, 1958, 356 U.S. 369, 384, 78 S.Ct. 819, 826, 2 L.Ed.2d 848, 857 (Frankfurter, J., concurring). The Model Penal Code of the American Law Institute defines entrapment in this context as "employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons others than those who are ready to commit it." Section 2.13.

3. The first federal case to recognize the doctrine was Woo Wai v. United States, 9 Cir. 1915, 223 F. 412. *See generally* Donnelly, Judicial Control of Informants, Spies, Stool Pigeons, and Agent Provocateurs, 60 Yale L.J. 1091, 1098–1115 (1951); Note, 45 Tex.L.Rev. 578 (1967); Note, 26 La.L.Rev. 848 (1966); Note, 74 Yale L.J. 942 (1965).

4. A minority of the Court has always believed that the defense was a judicial one, recognized by the courts for the protection of their "own functions and the preservation of the purity of its own temple * * *." 287 U.S. at 457, 53 S.Ct. at 218, 77 L.Ed. at 425. Hence, in this view the issue is one to be tried by the court. *See generally* United States v. Riley, 2 Cir. 1966, 363 F.2d 955, 957.

5. In Blake v. United States, 5 Cir., en banc, 1969, 407 F.2d 908, we said: " * * * the question of sufficiency of the evidence necessary to make an issue for the jury * * * is for the court." *See also* United States v. Riley, *supra.*

6. In dealing with entrapment, courts and commentators have shown a weakness for metaphor as well as for definition. *See, e. g.,* ALI Model Penal Code, Tentative Draft No. 9, p. 21, which indicates that the relevant inquiry is: "Is the defendant a strayed lamb or an ensnared wolf?" *See* Donnelly, supra note 3, at 1114.

*pra*, we have held that the burden of proving inducement is on the defendant,[7] and the burden of proving that the inducement did not corrupt an innocent or unwilling man is on the government. Hannah v. United States, 5 Cir. 1968, 396 F.2d 785; Kivette v. United States, 5 Cir. 1956, 230 F.2d 749.[8]

There is dicta in some of our opinions that can be urged to suggest that the entrapment defense should go to the jury whenever there is some evidence of an initial approach by the government. See Wall v. United States, 5 Cir. 1933, 65 F.2d 993; Accardi v. United States, 5 Cir. 1958, 257 F.2d 168; Park v. United States, 5 Cir. 1960, 283 F.2d 253; Walk-

er v. United States, 5 Cir. 1962, 301 F. 2d 94; Brainin v. United States, 5 Cir. 1963, 314 F.2d 460, rehearing denied, 317 F.2d 69. And in a factual situation comparable to the one here presented, the issue of entrapment has been submitted to a jury. Suarez v. United States, 5 Cir. 1962, 309 F.2d 709, 711.

When it first faced the issue squarely, however, this Circuit recently held that the entrapment issue need not be presented to the jury if the evidence does not sufficiently raise the issue. Snowden v. United States, 5 Cir. 1967, 384 F.2d 357. And this is the inevitable conclusion to be reached from the Supreme Court's statement in Lopez v.

---

7. "Inducement" as such would appear to be present in any case in which the undercover agent initiated the negotiations for the criminal deal. *See* Sherman v. United States, 1958, 356 U.S. 369, 382, 78 S.Ct. 819, 2 L.Ed.2d 848 (Frankfurter, J., concurring); Trent v. United States, 1960, 109 U.S.App.D.C. 152, 284 F.2d 286, 288 n. 2; *accord*, Berry v. United States, 1963, 116 U.S.App.D.C. 375, 324 F.2d 407, 410 (dissenting opinion).

8. The First Circuit held recently that it would require submission of the entrapment issue to the jury whenever there is evidence that would warrant a finding that the government initiated the opportunity for the defendant to commit the crime, with instructions that "the defendant is entitled to a charge that the government has the burden of proving beyond a reasonable doubt either that there was in fact no inducement, or that the defendant was predisposed." Sagansky v. United States, 1966, 358 F.2d 195, 202–203. It reviewed its position in Kadis v. United States, 1 Cir. 1967, 373 F.2d 370, and said:

"Henceforth we will look, singly, at the ultimate question of entrapment. If the defendant shows, through government witnesses or otherwise, some indication that a government agent corrupted him, the burden of disproving entrapment will be on the government; but such a showing is not made simply by evidence of a solicitation. There must be some evidence tending to show unreadiness."
373 F.2d at 374
A somewhat different position has been taken in the Second Circuit. The views of two different panels of that Circuit

are reflected in United States v. Riley, 2 Cir. 1966, 363 F.2d 955, and United States v. Dehar, 2 Cir. 1968, 388 F.2d 430. The opinion by Judge Friendly in *Riley* rejects the *Sagansky* view, and says:

"A sensible middle of the road solution, consistent with our own decisions and with most elsewhere, would be that, even when inducement has been shown, submission to the jury is not required if uncontradicted proof has established that the accused was 'ready and willing without persuasion' and to have been 'awaiting any propitious opportunity to commit the offense.'" 363 F.2d 959.

The Court of Appeals for the District of Columbia would apparently go as far as *Sagansky*, for in Johnson v. United States, 1963, 115 U.S.App.D.C. 63, 317 F.2d 127, it held that "the furnishing by the officer of Government money, itself a persuasive factor, to an intermediary acting for the officer in carrying out the transaction, with a 'reward' to the accused of a part of its fruit" was enough "to raise a factual issue of official inducement for the jury to decide one way or the other." 317 F.2d at 128. Judge Bastian, dissenting, said:

"I have also thought a basic requirement of that defense to be that the Government use some form of direct persuasion on the accused to urge him to commit the crime, else I do not see why it is unfair or unjust to convict him of the crime he admittedly has committed. In all of the cases I have encountered in which entrapment has been urged successfully, there was evidence that the Government sought directly to *persuade* the accused to violate the law." 317 F. 2d at 133. (Emphasis in original.)

United States, 1963, 373 U.S. 427, 436, 83 S.Ct. 1381, 1386, 10 L.Ed.2d 462:

> "Indeed, the paucity of the showing [of entrapment] might well have justified a refusal to instruct the jury at all on entrapment."

■ We affirm the view implicitly adopted in *Snowden*. There is neither need nor reason for the trial judge to deal with the issue of entrapment differently from the way he handles any other issue. If there is any evidence in the record that, if believed by the jury, would show that the government's conduct created a substantial risk that the offense would be committed by a person other than one ready to commit it,[9] then, as in all other cases involving questions of guilt or innocence, the jury must be permitted to resolve the matter. If the record as a whole is devoid of such evidence, astute defense counsel may not invite confusion of the jury by seeking charges on this or on any other problem not presented by the case before the court.[10] The court should charge the jury only on issues properly before it; it is not appropriate to convert the charge into a treatise on criminal law.

Hence, there is nothing to go to the jury if the evidence as a whole, including all inferences that can reasonably be drawn from it, both with respect to the government's actions and the defendant's occupation, experience and background, is uncontradicted that the government did not employ methods of persuasion or inducement that would create a substantial risk that the offense would be committed by a person who was not ready to commit it, that is, that it neither misled an innocent person into transgression nor overcame the scruples of a person who would otherwise have resisted temptation. Under these circumstances there is no issue of entrapment for the jury to decide, and an instruction on the question—indeed, the mere use of the term "entrapment"— might be misleadingly suggestive.

■ Searching the record in this light, we find no evidence of entrapment here. Pierce was eager to sell counterfeit money to the undercover agent from the moment they first met. Like any good salesman, he extolled the quality of his wares. Like any cautious criminal,

9. This is the test for entrapment suggested by the ALI Model Penal Code (Proposed Official Draft) § 2.13(1)(b), p. 43 (1962).

10. In Encinas-Sierras v. United States, 9 Cir. 1968, 401 F.2d 228, 232, the court stated: "Since there was no evidence of entrapment, the district court was right in refusing to give an instruction on that subject. It would have served only to confuse the jury." For cases following the same view, see, e. g., United States v. Ramsey, 2 Cir. 1967, 374 F.2d 192; United States v. Lile, 6 Cir. 1961, 290 F.2d 225; United States v. Di Donna, 2 Cir. 1960, 276 F.2d 956; United States v. Gironda, 2 Cir. 1959, 267 F.2d 312; United States v. Place, 2 Cir. 1959, 263 F.2d 627; Crisp v. United States, 4 Cir. 1958, 262 F.2d 68.

The evidence was held sufficient to go to the jury in a host of cases of which the following are typical: Cazares-Ramirez v. United States, 5 Cir. 1969, 406 F.2d 228; Carson v. United States, 9 Cir. 1962, 310 F.2d 558; Coronado v. United States, 5 Cir. 1959, 266 F.2d 719; United States v. Sawyer, 3 Cir. 1954, 210 F.2d 169; Lutfy v. United States, 9 Cir. 1952, 198 F.2d 760, 33 A.L.R.2d 879.

If there is a factual controversy it is usually for the jury to resolve, not for the court to find as a matter of law. United States v. Gaines, 6 Cir. 1965, 353 F.2d 276; United States v. Williams, 6 Cir. 1963, 319 F.2d 479; Hattem v. United States, 9 Cir. 1960, 283 F.2d 339. However, the evidence may be so strong that the court may be justified in finding entrapment as a matter of law. Suarez v. United States, 5 Cir. 1962, 309 F.2d 709, 711; Henderson v. United States, 5 Cir. 1958, 261 F.2d 909; United States v. Klosterman, 3 Cir. 1957, 248 F.2d 191, 69 A.L.R.2d 1390.

Compare the discussion of entrapment as a defense in the ALI Model Penal Code, Tentative Draft No. 9, pp. 13–24. The Institute has taken the position that the trial of the entrapment issue is for the court. ALI Model Penal Code (Proposed Official Draft) § 2.13(2) (1962). Whether the jury or the court should resolve the entrapment issue is discussed at pp. 21–22 of Tentative Draft No. 9.

he sought to avoid detection. He was cool to the agent in only one conversation, when he told the agent that his sources of supply suspected the agent of being "an FBI man." Even in this conversation, he evidenced merely fear of detection, not lack of eagerness to make the profit he would receive as a middleman in an illegal enterprise if he could negotiate a sale of the counterfeit wares. As the Court observed in Osborn v. United States, *supra*, (where the issue had been submitted to the jury) to furnish " 'opportunity or facilities' for the commission of a criminal offense * * * is a far cry from entrapment." 385 U.S. at 331–332, 87 S.Ct. at 434. In our opinion, therefore, the trial judge properly refused to submit the entrapment issue to the jury.

## III. OTHER ISSUES

Appellant contends that he is entitled to a new trial because of the conduct of the Assistant United States Attorney in failing to disclose the address of a witness. The defendant filed a motion asking the court to require the government to disclose the whereabouts of "Tony Garcia" and another person. The judge ordered the Assistant United States Attorney handling the prosecution to furnish any information the government had. The Assistant United States Attorney furnished the address of the other person, but said he had no information about "Tony Garcia."

The defense also filed a Jencks Act motion. After the government rested, it tendered the material required by the Jencks Act. 18 U.S.C. § 3500. This material contained references to "Rudolph Anthony Garza." This man was in fact the person about whom the defense had previously inquired, and he was not present at the trial. Over defense objection, the trial judge ordered the trial to proceed, but, after the conviction, he held an evidentiary hearing on a motion for a new trial and concluded that the defendant had not been prejudiced in any way by the absence of Garza.

We have carefully reviewed the record, and we find that it amply supports the trial judge's conclusion that no prejudice resulted because of the absence of Garza. This in no way condones the action of the Assistant United States Attorney. Once an order has been directed to counsel, the court's ruling must be complied with in spirit as well as in letter, and information may not be withheld with the notion that this can be done with impunity if the evidence is ultimately found not to be helpful to the defense. However, in this case, the testimony of Garza was in fact taken and it was shown that it could have been of no conceivable benefit to the defendant. In addition, the trial court took such action as it considered necessary to discipline the overzealous Assistant United States Attorney, and the United States Attorney's office also took action to prevent the likelihood of such episodes recurring. Therefore, we have concluded that the interests of justice do not require a reversal on this issue.

The defendant also complains that he was not furnished transcriptions of oral statements made by the defendant prior to trial. The trial court ordered these produced during the trial, and we think he acted within the range of discretion allowed him under Rule 16(a).

Nor is there merit in the complaint that the government said, in response to a motion to produce under Rule 16(a) of the Federal Rules of Criminal Procedure, that it had no "written or recorded statements made by the defendant," when in fact it had a report by the undercover agent that quoted oral statements made by Pierce. The agent's report was delivered to the judge together with other material during the trial, and the judge ordered it delivered to defense counsel.[11] Under the circumstances of this case, we think that the

---

11. *See generally* 18 U.S.C. § 3500.

trial judge acted within the proper limits of his discretion.[12]

The final issue raised by the appeal is the alleged coercion by the government of Pierce's former wife, who was a witness in the case. The trial judge received evidence on the matter and found no improper action by the government. We are of the same view.

Therefore, the judgment is affirmed.

GODBOLD, Circuit Judge (specially concurring):

I concur in the opinion written by my Brother RUBIN. But I must state briefly what I understand the court to be deciding.

As the majority point out, based on United States v. Sherman, 200 F.2d 880 (2d Cir. 1952), entrapment is concerned with two areas of evidence, the evidence of what the government did (the "inducement") and the evidence of whether the defendant is one not likely or not ready to commit the crime (the "predisposition"). *Sherman*, repeatedly followed in this circuit and elsewhere, also establishes that the burden of proof of governmental activity is on the defendant and the burden of proof of predisposition is on the government. I understand that we do not depart from that principle.

If all the evidence establishes *without contradiction* that the government did not employ methods of persuasion or inducement that would create a substantial risk that the offense would be committed by a person who was not ready to commit it, then there is nothing to go to the jury. If there is evidence which, if believed by the jury, would show that the government engaged in conduct which created a substantial risk that the offense would be committed by a person other than one ready to commit it, and if the jury could conclude, from all the evidence, that the defendant was not ready to commit the act (i. e., was not predisposed), then the matter must go to the jury; in this circumstance the court cannot take from the jury the question of whether the governmental conduct in fact did lead an innocent into transgression or did overcome the scruples of a person who otherwise would have resisted temptation.

For reasons stated in my dissent in Snowden v. United States, 384 F.2d 357, 358 (5th Cir. 1967) I do not draw my conclusions from what my associates in this case, drawing from a cryptic fragment of a sentence in *Snowden*, say is implicit in that decision.

---

12. Cf. Battaglia v. United States, 9 Cir. 1965, 349 F.2d 556, 560; United States v. Knox Coal Company, 3 Cir. 1965, 347 F.2d 33, 48; Ogden v. United States, 9 Cir. 1962, 303 F.2d 724, 740.