UNITED STATES of America,
Plaintiff-Appellee,

v.

Antonio Cepeda CABRERA, Defendant-
Appellant.

No. 26869.

United States Court of Appeals
Fifth Circuit.

Oct. 1. 1969.

Godbold, Circuit Judge, dissented.

Philip Juarez, Austin, Tex., court-appointed, for appellant.

Jeremiah Handy, Warren Weir, Asst. U. S. Attys., Ted Butler, U. S. Atty., San Antonio, Tex., for appellee.

Before AINSWORTH and GODBOLD, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge:

Antonio Cepeda Cabrera and Mrs. Guadalupe Vela were tried jointly by jury and convicted of unlawfully receiving, concealing, and facilitating the transportation and concealment of approximately 100 grams of heroin. 21 U.S.C. § 174. This appeal followed in Cabrera's case; Mrs. Vela did not appeal. For the reasons hereinafter to be given, we affirm.

A discussion of the significant issues follows:

### Motion to Suppress

May 9, 1968, in Laredo, Texas, customs agent James Kuykendall met with an informant, Rogelio Hernandez, who on the same day, had advised Kuykendall that he had been hired to deliver one "Lupe," at 1107–C Burger Street, Austin, Texas, a package containing approximately 100 grams of heroin. The heroin was in a prophylactic which had been covered with a Mexican newspaper and placed in a brown paper bag.

Thereafter, Kuykendall prepared a dummy package which contained cocoa and milk sugar and about three grams of the original 100 grams of heroin.[1] The dummy was wrapped in the same newspaper and placed in the same paper bag as were used for the original package.

After preparing the dummy package, Kuykendall, along with another customs agent, and the informant, drove to San Antonio, Texas, where they picked up a kit containing fluorescent powder and a light that would illuminate the powder when exposed to it. They then proceeded to Austin, Texas. Upon arrival at the Austin Police Station, Kuykendall dusted with fluorescent powder the prophylactic, which contained the dummy substance. He also dusted the Mexican newspaper, which was wrapped around the prophylactic. He placed the wrapped prophylactic in the paper bag but did not dust the bag. Thereafter, Kuykendall, the informant, and other officers went to a certain Texas truck stop in Austin and set up surveillance.

Kuykendall and the informant went to a nearby telephone, where the informant, in an effort to reach Lupe, twice dialed a number listed under the name Johnny Vela; but each time he was unable to reach Lupe. Since the informant was not available to testify in any of the proceedings in this case, Kuykendall, who had monitored the calls by placing his ear near the telephone, supplied the testimony about the calls. Kuykendall testified that in each call, a male voice was on the other end of the telephone, and only Spanish was spoken. According to Kuykendall, the informant's third call to the same number reached a woman who identified herself as Lupe. Again, only Spanish was spoken. The informant told Lupe that he was at the station with the "merchandise" that had been sent by one Arturo. Lupe replied that she soon would be there, with money, to get it.

As a result of this call, the informant, with the dummy package in his possession, assumed his position in front of the Texaco station. About one hour after the call, a two-door Pontiac Grand Prix automobile, being driven by Mrs. Guadalupe Vela, arrived at the scene. With her, were appellant, one Patrick Castro, and two children. One of the men was in the front bucket seat, beside the driver's seat; the other was in the back seat, on the right side; the two children were in the front portion of the car, apparently between the bucket seats.

The man in the rear seat got out of the car and approached the informant.

---

1. This, of course, was done to protect against loss of the original amount of the contraband.

After a few brief words, the man returned to his place in the right rear seat of the car. The informant then went to the driver's side of the vehicle and peered into the window for a few seconds, apparently talking to Mrs. Vela. Thereafter, the informant got into the car on the driver's side, taking a place on the rear seat. After the car had been driven about a block from the scene, the police converged on it and arrested appellant, Mrs. Vela, and Patrick Castro.[2]

At the time of arrest, Mrs. Vela was still driving; Castro was sitting on the right front seat; and appellant was sitting in the right rear seat. The dummy package, which had been removed from the paper bag but remained wrapped in the newspaper, was found in front of the right rear seat, wrapped in a towel. The paper bag was not found.

The three were taken to the Austin Police Station, where, after appropriate warnings, their hands and arms were subjected to a fluorescent light to see if they had handled the dummy package. No fluorescent powder was found on Patrick Castro; a few specks appeared on Mrs. Vela's arms; and appellant's hands "shone brightly."

■ Appellant's contention that the dummy package and its contents should have been suppressed clearly is without merit. There was more than sufficient probable cause on which to base a warrantless arrest of Mrs. Vela; and the package was admissible as an incident to that arrest. Quite obviously, and reasonably so, the arresting agent concluded that Mrs. Vela was the mysterious "Lupe," to whom the package was supposed to be delivered. The informant,

whose assistance led to the events surrounding the arrests, was proven to be reliable. And with the automobile exiting from the scene, the officers had no choice but to arrest at that time.[3]

■ Likewise without merit is appellant's contention that it was error to admit into evidence that portion of the heroin that was in the original package but not placed in the dummy, and that testimony relating to what transpired in Laredo, Texas, with reference to the original package. As a rather specious basis for this contention, appellant argues that no nexus was established between the events in Laredo and the arrests in Austin, Texas. But the nexus was patent. The original package was part of the contraband that was supposed to be, and, in dummy form, ultimately was, delivered in Austin.

■ Finally, appellant contends that, at the motion-to-suppress hearing, the trial court erred in allowing hearsay testimony as to what had been said by the informant, who, as previously mentioned, was unavailable for testimony. This was not error. It is well settled that where an informant's reliability is established, which is the case here, hearsay may be the basis for searches with or without warrant.[4]

### Refusal to Give Entrapment Instructions

After completion of the evidence, the trial court refused appellant's request for instructions on entrapment. This was not error.

■ Before such instructions should be given, there must be evidence warranting a jury issue. None existed here.

---

2. The police allowed the informant to escape.

3. See Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); United States v. Acosta, 411 F.2d 627 (May 22, 1969, 5 Cir.); Smith v. United States, 385 F.2d 34 (5 Cir. 1967).

4. Jones v. United States, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); Aguilar v. Texas, 378 U.S. 108, 114 (1964); Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964). See also Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

Appellant's assertion in brief, that the informant could have conceived the whole scheme to trap certain unwary and innocent persons, is nothing more than suspicion, wholly unsupported by any evidence.[5] See Pierce v. United States, 414 F.2d 163, (5th Cir., July 2, 1969), which contains an extremely well documented discussion of the elements of entrapment. There a government agent had contacted the defendant in a counterfeit case some 23 to 25 times before finally making a "buy" from him, and this court upheld the district court's refusal to give a charge on entrapment because the record as a whole was devoid of evidence showing that " * * * the offense would be committed by a person other than one ready to commit it." Here, likewise there was no evidence to show that Cabrera was likely innocently to have possessed the contraband (only one contact with him having been made), and, as set forth *infra*, the facts as to his actions were entirely adequate for the jury reasonably to infer a finding of guilt beyond a reasonable doubt. Moreover, the District Judge correctly charged the jury as to the necessary weight of circumstantial evidence in order to find guilt beyond a reasonable doubt, as well as upon all of the substantive elements necessary to have been proven before appellant could have been found guilty.

### Sufficiency of the Evidence

■ Violation with which appellant was charged and for which he was con- victed is established, *prima facie*, by proof of possession of the narcotic drug.[6] And possession is susceptible of proof by circumstantial as well as direct evidence.[7]

By far the most serious question in this case is whether the evidence of possession was sufficient to support the jury's verdict and the trial court's refusal to grant motions for judgment of acquittal. Cautious as we must be in circumstantial evidence cases, such as this one,[8] we agree with counsel for appellant, that there must have been more evidence of guilt than the mere presence of fluorescent powder on appellant's hands; indeed, this alone does not exclude the hypothesis that appellant, ignorant of the contents of the package, was holding it for another. But there was far more.

Of crucial importance is the testimony at trial that appellant was sitting in the right rear seat, which was the seat of the person who got out of the car, briefly talked with the informant, and returned to the car. Moreover, only a minute or so later the dummy package was found directly in front of appellant's position in the car; and the package had been removed from the paper bag and wrapped in a towel.

When these circumstances are added to those relating to the prior arrangements for delivery made by the informant with his contact, we see but one reasonable hypothesis for the jury to have

---

5. See Snowden v. United States, 384 F.2d 357 (5th Cir. 1967), cert. den. 390 U.S. 966, 88 S.Ct. 1075, 19 L.Ed.2d 1169 (1968); United States v. Ramsey, 374 F.2d 192 (2d Cir. 1967); Brainin v. United States, 314 F.2d 460, reh. den. 317 F.2d 69 (5th Cir. 1963); Kivette v. United States, 230 F.2d 749 (5th Cir. 1956).

6. "Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury." 21 U.S.C. § 174.

7. Knapp v. United States, 311 F.2d 71 (5th Cir. 1962); Rodella v. United States, 286 F.2d 306 (9th Cir. 1960), cert. den. 365 U.S. 889, 81 S.Ct. 1042, 6 L.Ed.2d 199 (1961).

8. See Vick v. United States, 216 F.2d 228 (5th Cir. 1954).

drawn with respect to appellant—possession (etc.) justifying conviction.[9]

Accordingly, the judgment below is Affirmed.

GODBOLD, Circuit Judge (dissenting):

I am unable to join in an affirmance. The evidence of possession of narcotics was insufficient under numerous decisions of this and other courts which the majority neither mention nor discuss.

Fitzpatrick v. United States, 410 F.2d 513, 5th Cir. 1969; Montoya v. United States, 402 F.2d 847 (5th Cir. 1968); Paige v. United States, 394 F.2d 105 (5th Cir. 1968); Julian v. United States, 391 F.2d 279 (9th Cir. 1968); Allison v. United States, 348 F.2d 152 (10th Cir. 1965); Guevara v. United States, 242 F.2d 745 (5th Cir. 1957); Barfield v. United States, 229 F.2d 936 (5th Cir. 1956); Camilla v. United States, 207 F.2d 339 (6th Cir. 1953).

In the context here concerned possession means actual control, dominion or authority. *Fitzpatrick, supra; Allison, supra; Barfield, supra.* Mere suspicion of possession is not enough. *Paige, supra.* Because unexplained possession will authorize a conviction, the evidence relied on as proof of possession must be scrutinized with care to prevent grave injustice. *Guevara, supra.*

From the evidence of fluorescent powder on appellant's hands the jury could infer that appellant touched the package in the process of removing the outer wrapper (a paper sack) or in the process of rewrapping the package (in the towel),

or at some point between these two operations. In the interim between the two operations the interior wrapping (a newspaper dusted with fluorescent powder) would have been exposed, and, if the newspaper also was unwrapped and replaced before the package was rewrapped in the towel, the prophylactic (also dusted with fluorescent powder) would have been exposed temporarily.

The informant did not testify. From the time that the informant entered the car the record is silent on his actions and the actions of all other occupants as well. We do not know who removed the outer wrapping, and who rewrapped the parcel in the towel, and whether in the interval the inner (newspaper) wrapping was so disturbed as to reveal the contents. We do not know who placed the towel-wrapped package in front of where appellant was sitting. Whether appellant's physical contact with the parcel was intentional, fortuitous, or on request of the informant or of Mrs. Vela, is wholly speculative. Whether appellant's contact consisted of the affirmative act of unwrapping or rewrapping or was a transitory handling or a passive holding, is only a subject of guess. Whether he knew there were drugs in the package is no less speculative.

Regardless of whether appellant's touching consisted of affirmative acts or of mere passive holding of the package, there is no evidence tending to show that what he did constituted an assertion of control or dominion in his own behalf rather than simply the act of an unwitting dupe for Mrs. Vela or for the informant. The concurring opinion of

9. Julian v. United States, 391 F.2d 279 (9th Cir. 1968), is inapropos when its facts are contrasted to those described *supra.* There the court held there was insufficient evidence of "possession" of a stolen car, where all that was shown was that he was found asleep in the car, and possessed certain items which had been left in the car. Here, as shown, there were at least seven strong circumstances proving knowing possession of the contraband: 1) his leaving the car and speaking to the informant; 2) his return to the same position on the right rear seat; 3) the informant's conversation with Lupe at the left door of the car, obviously all regarding the contraband; 4) the informant's entering the car and seating himself immediately to Cabrera's left; 5) the removal of the contraband from the paper sack and wrapping it in the towel; 6) the fluorescent material on appellant's hands; and 7) the location of the contraband directly in front of appellant's feet when the car was stopped only one block away.

Judge Brown in *Barfield, supra,* discussing the driving of a stolen car by a hitchhiker, points up some of the problems not wrestled with by the majority in the present case:

> In this light, I think much more must be shown than mere driving of a vehicle by one temporarily in the car as a hitchhiker. First, it lacks the essential characteristics of possession.
>
> Driving can be and frequently is in the ordinary experience of men, merely the exercise of a temporary control over the physical movements of the vehicle. While the fact of driving by one *alone* in the vehicle might under many situations afford a basis for men to believe that such driver has, or is claiming to exercise, the right of dominion or full control over its disposition or use and thus has possession of it, this does not hold, without more, for one temporarily driving for another then in the vehicle.

229 F.2d at 942–943. In measuring whether there is such assertion of dominion as to constitute possession, the touching of a package, with the scope, quality, purpose and nature of the contact unrevealed, is an act far more ambiguous than the affirmative and continuing acts of controlling and operating an automobile.

In other Dyer Act cases evidence showing no more than that the accused was in physical contact with the stolen property—either by touching it or sitting in it, or both—has been held insufficient to meet the requirements of assertion of control or dominion, requiring the grant of a motion for judgment of acquittal. In *Allison* the defendant's fingerprints were on the right front door and he was observed sitting in the right front seat while the car was standing still. In *Camilla* eight fingerprints of appellant were found on the rear vision mirror about a week after the car was stolen. The defendant in *Julian* was found asleep in Nevada in a car that recently had been stolen in Texas. The last lawful possessor of the car in Texas had left

in it his checkbook and savings passbook. Both of these were found in the pocket of the defendant. This evidence was held insufficient to satisfy the test of guilt beyond reasonable doubt and the Dyer Act conviction was reversed.

Possession may be proved by circumstantial evidence, but the evidence must exclude every reasonable hypothesis except that of guilt. *E. g., Montoya, supra; Guevara, supra.* In this case the flimsy net of speculation, conjecture and guilt by association falls far short of the requirements of possession that can deprive an accused of his liberty and send him to the penitentiary if he does not come forward with an explanation. The inference that appellant got out of the car and talked to the informant does not change the nature of appellant's physical contact with the package. So far as this record shows he may have done no more than ask informant his name. Appellant is not charged with conspiracy, and his conviction may not stand on the theory that he was vicariously. in possession as an aider and abettor of Mrs. Vela. *Fitzpatrick, supra; Barfield, supra* (footnote 5 to concurring opinion, 229 F.2d at 943).

I turn to the second reversible error, refusal to charge the jury on entrapment. This is almost a classic case requiring an entrapment instruction. The problem is not, as phrased by the majority, whether the government concocted a scheme to trap innocent or unwary persons. That misconceives the nature of entrapment. The government's motives may be the highest but its actions such that the issue of entrapment must go to the jury.

> If there is any evidence in the record that, if believed by the jury, would show that the government's conduct created a substantial risk that the offense would be committed by a person other than one ready to commit it, then, as in all other cases involving questions of guilt or innocence, the jury must be permitted to resolve the matter.

Pierce v. United States, 414 F.2d 163, 5 Cir. 1969.

Entrapment is concerned with two areas of evidence, the evidence of what the government did (the "inducement") and the evidence of whether the defendant is one not likely or not ready to commit the crime (the "predisposition"). The leading case is United States v. Sherman, 200 F.2d 880 (2d Cir. 1952). *Sherman* establishes also that the burden of proof of governmental activity is on the defendant and the burden of proof of predisposition is on the government. This has been expressly approved in the Fifth Circuit. E. g. Kivette v. United States, 230 F.2d 749 (5th Cir. 1956). *Pierce* articulates the standard to be employed in examining the state of the evidence. The defendant's burden was fully discharged in this case, because the government's own evidence disclosed a course of governmental conduct creating "substantial risk" that the offense might be committed by one innocent or unready. The only evidence of "predisposition" is that appellant got out of the car and said something to the informant.

Appellant was not shown to have any connection with Mrs. Vela, with the listed telephone, with the telephone conversation, with the informant, or with the transaction other than the facts of what occurred at the scene of the buy. In the end, guilt rests on the appellant's presence at the scene and his touching of a package containing contraband. As already developed in detail, the record is wholly silent on the facts of his contact with the package, introduced by the informant into the confined limits of a car occupied by several persons. The package was dusted with the fluorescent powder to create a physical link in a chain of evidence that would lead to the person or persons who touched the package. One who came in contact with the package might be a purveyor of narcotics exerting dominion over his purchase, he might be one touching accidentally or intentionally but inadvertently, or he might be a wholly innocent participant touching at the specific request or instigation of the non-testifying informant. The risks are too high that the link of physical contact in the chain of evidence was forged by contact with the package by one not asserting dominion or control at all or, if by one asserting dominion or control, by one not ready to commit the offense. The evidence does not meet the standard articulated in *Pierce*, requiring that it be "*uncontradicted* that the government *did not employ* methods of persuasion or inducement that would create a substantial risk that the offense *would be committed by a person who was not ready to commit it.*" [1] The burden of proof having been met as to the scope and quality of governmental conduct (the "inducement") a jury issue was present. The issue which this court is required to consider in this case is not whether one innocent or not ready to commit the offense was in fact swept up by physical contact with the package, but whether there was substantial risk of that occurring. The substantial risk was present. This entitled the appellant to have the jury consider under proper instructions the issue of entrapment, which includes both areas of inquiry—what the government did and whether appellant was predisposed. The majority view *Pierce* as correctly stating the law of

1. Testimony by the informant as to what he did and said, after the informant entered the car, might have minimized the substantial risk that there was physical contact with the package by one not intending to assert dominion or control, or one asserting dominion but not ready to commit the offense. There was no such testimony in this case.

The range of possibilities would at least have been narrowed had there been evidence of whether after the buy the informant had fluorescent powder on his hands. Compare the usual meticulous care with which the government, in sending an informant to make a buy, searches his clothing before he departs on his mission, to negate the possibility of his already having in his possession narcotics which he might later say he acquired from an accused seller.

entrapment. But in my view they have not correctly applied the principles of that case to the facts before us.

I respectfully dissent.