**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert Donald SULLIVAN, Defendant-
Appellant.**

**No. 31076.**

United States Court of Appeals,
Fifth Circuit.

June 11, 1971.

Arch B. Gilbert, Ft. Worth, Tex., court appointed, for defendant-appellant.

Eldon B. Mahon, U. S. Atty., W. E. Smith, Asst. U. S. Atty., Fort Worth, Tex., for plaintiff-appellee.

Before AINSWORTH, INGRAHAM and RONEY, Circuit Judges.

AINSWORTH, Circuit Judge:

Robert Donald Sullivan, Richard Hemby, Jerry Ed Burton, and Terry R. Alkire were indicted together on a two-count indictment charging them with smuggling benzedrine and dexedrine tablets into the United States, in violation of 18 U.S.C. § 845, and with conspiracy to commit that offense, in violation of 18 U.S.C. § 371. Sullivan was tried alone before a jury, convicted on both counts, and sentenced to serve two concurrent five-year terms in a federal penitentiary. On appeal, his principal contention is that the evidence in the record was insufficient to sustain his conviction on either count. We affirm.

A jury verdict in a criminal case must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). Taking that view of the evidence in this case, the following facts appear.

Jerry Burton and Richard Hemby met in jail in the latter part of 1969. Burton had previously sold dexedrine and other pills to users for profit. In January or February of 1970, Hemby and Robert Sullivan (the appellant) went to Burton's apartment in Fort Worth, where Sullivan met Burton for the first time. With Sullivan present, Hemby asked Burton if he had any pills for sale. Burton said he did not. Approximately one week later, Sullivan and Hemby came to see Burton again. They indicated that they were about to take a trip; both wanted to know whether Burton had any pills. Burton again replied that he had not been able to locate a source of supply.

Several nights later Hemby called Burton and asked if Sullivan had been in touch with him. Burton said no. Hemby went on to offer Burton $75 cash, plus gas, if Burton would go to Nuevo Laredo, Mexico, across the border from Laredo, Texas, and buy $300 worth of pills. Hemby stated that Sullivan was putting up half the money, and that

Sullivan knew the place to get the pills. That same night Sullivan called Burton and asked if Hemby had talked to him.

Hemby contacted Burton concerning pills several times during March of 1970. On April 6 or 7, Burton, Hemby, and Terry Alkire met at the Cinders Club in Dallas and set up the trip to Nuevo Laredo. Hemby stated again that he and Sullivan were each putting up half the money.

One night shortly thereafter, Burton, Alkire, and Dale Crowley met Hemby in a parking lot. Hemby gave Burton the money and two notes containing specific instructions as to where to go in Nuevo Laredo, whom to see, and what to pick up. Burton, Alkire, and Crowley thereupon drove to Nuevo Laredo, where Burton and Alkire purchased the pills. Crowley returned alone in the car. Burton and Alkire were apprehended at the border in a Mexican taxi by U. S. Customs Inspectors, who found approximately 5,000 benzedrine and dexedrine tablets in bags hidden under the front seat. Burton and Alkire were arraigned in Laredo, Texas, released on bond, and brought back to the Fort Worth area with the pills by a Special Customs Agent.

On April 10, under the surveillance of Special Agents, Burton placed a telephone call to Hemby from a booth outside the Western Hills Motel in Euless, Texas. Hemby agreed to receive the pills at the motel. He arrived in a 1956 Buick, accepted the pills from Burton in the motel parking lot, and was arrested by Special Agents and local police officers as he attempted to leave.

Hemby then called Sullivan from a phone booth in front of the motel, in the company of a Special Agent. It was approximately 2 a. m. The Special Agent heard only Hemby's part of the conversation, the gist of which was: "Robert, I just met with Jerry and he gave me the stuff. I don't want to keep it overnight. If you can come down and meet me at the Western Hills Motel, my car broke down, give me a ride home."

Hemby hung up and told the officers he would have to place another call in fifteen minutes. Before he did so, he removed the battery cable from his car. He placed the second call from a room in the motel, stating to Sullivan again that his car had broken down and that he did not want to keep "the stuff" overnight. Hemby returned to his car, and officers took up positions of surveillance around it.

At approximately 2:30 a. m. Sullivan arrived, and Hemby got into Sullivan's car with the pills. Officers shouted, "Police, stop, stop," and "Give it up, Sullivan." Sullivan partially opened the left front door, fired a shot, and tried unsuccessfully to take the car over a deep ditch. The officers returned Sullivan's fire. When they reached the car they found Hemby immobilized beside it with severe gunshot wounds in the neck. Other officers crossed the highway and found Sullivan lying face down under a billboard. The pills were found under the floorboard of Sullivan's car, and scattered in the ditch beside it.

■ Sullivan contends that he knew nothing of the Nuevo Laredo expedition, and came to the Western Hills Motel solely to assist a friend whom he believed was having car trouble. We are persuaded that a reasonably minded jury could have concluded beyond a reasonable doubt that this was not the case. Hemby's call to Sullivan from the motel mentioned not only car trouble, but "Jerry" and "the stuff." From the evidence as to events preceding the call, the jury could reasonably have inferred that Sullivan understood "Jerry" to refer to Burton, and "the stuff" to mean "the pills." Two calls, fifteen minutes apart, were required to get Sullivan to come to the motel. He came armed. Hailed by the police after Hemby had entered the car with the pills, he fled, firing a shot behind him, and tried to clear an impassable ditch in the car. Reasonable minds could have concluded that the evidence, taken as a whole, was inconsistent with the hypothesis of Sullivan's innocence, and that he was guilty as charged

on both the conspiracy and the substantive counts. Cf. United States v. Warner, 5 Cir., 1971, 441 F.2d 821; United States v. McGann, 5 Cir., 1970, 431 F.2d 1104.

 Appellant's additional arguments are insubstantial. The objections made at trial to the admission of evidence and renewed on appeal are groundless. Appellant's requested instruction on entrapment was properly refused for lack of any substantial evidence that he was entrapped. See Pierce v. United States, 5 Cir., 1969, 414 F.2d 163, cert. denied, 396 U.S. 960, 90 S.Ct. 435, 24 L.Ed.2d 425; Cullifer v. United States, 5 Cir., 1969, 413 F.2d 300.

The judgment of conviction is affirmed.