Lima Lynn KIVETTE and Dow Kivette, Appellants,

v.

UNITED STATES of America, Appellee.

No. 15630.

United States Court of Appeals Fifth Circuit.

March 7, 1956.

Fred W. New, Quitman, Ga., for appellants.

Joseph H. Davis, Asst. U. S. Atty., Frank O. Evans, U. S. Atty., Macon, Ga., Robert B. Thompson, Asst. U. S. Atty., Macon, Ga., for appellee.

Before BORAH, TUTTLE and BROWN, Circuit Judges.

TUTTLE, Circuit Judge.

Dow Kivette and Lima Lynn Kivette, husband and wife, appeal from their convictions of possessing, transporting, and selling nontaxpaid distilled spirits.[1] Although it is briefly urged that the verdict was contrary to the weight of the evidence, the main points relied on for reversal are (1) the overruling of a motion to dismiss the indictment for misjoinder of defendants and offenses; (2) the overruling of a motion to suppress evidence on the ground that it was illegally obtained; (3) the refusal of the trial court to rule that the defendants had been entrapped, as a matter of law, and alleged error in the charge to the jury on the issue of entrapment; (4) the requiring that Dow Kivette identify himself in open court; and (5) the refusal of the court to charge that if Mrs. Kivette acted in company with her husband in the commission of a felony, other than treason or homicide, it is conclusively presumed that she acted under his coercion, and was therefore without the requisite criminal intent in committing the offenses charged.

The evidence for the United States, uncontradicted by the appellants, was that at about eleven o'clock in the evening of June 23, 1954, state revenue officer Hollingsworth and detective Chapman of the Columbus, Ga., city police drove out to the Kivettes' home in rural Harris County, Georgia. Chapman was wearing working clothes, and Hollingsworth was attired in sport pants, an ordinary leather belt, tan shoes and a World War II type Air Force shirt, with shoulder patch and technical sergeant's chevrons. There was an Army tie and cap in the back of the car and a tag affixed to the rear thereof indicating that the car was permitted on the military reservation at Fort Benning, Georgia.

After Hollingsworth pulled into the driveway and blew the horn, Dow Kivette came to the car and confirmed, upon inquiry, that it was the Kivette residence. Hollingsworth said, "Well, we want to get a couple of gallons of good liquor if you've got it." Kivette answered that he didn't know them. Hollingsworth replied that someone had told him that Kivette had liquor and added, "I'd keep my mouth shut." To this Kivette answered that he was a big liquor man, but that he had never sold to a fellow he didn't know in his life. Hollingsworth stated that they were from "out Fort Benning way," and Kivette, after looking over the car, told them that he would let them have some liquor, and sold them two gallons for $14.00.

Hollingsworth returned at about 10:15 p. m. on June 29, dressed as before, and accompanied by federal officer Causey, who wore a sport shirt and slacks. As they drove into the yard, Mrs. Kivette

[1] In violation of 26 U.S.C.A. § 2803(a) through (g).

came out on the porch, and Hollingsworth asked her if Dow was at home. She inquired of them what they wanted, and after being told that they had been there before, and wanted two gallons of whiskey, she said, "Well, let me go around and see Dow." Then she went around the corner of the house, and in a minute or two, Dow came from the other side of the house, carrying a gallon jug of whiskey. He said that if the men wanted another gallon, he would have to go after it. Hollingsworth replied that they did want another gallon, and Dow and Mrs. Kivette drove off in their car, returning in about twenty minutes with two gallons. Hollingsworth said that they would take all three, and paid Dow $21.00 for them.

In the early evening of July 1, 1954, Hollingsworth and Causey again went to the Kivette residence to purchase whiskey. Neither Dow nor Mrs. Kivette was at home, but their son, Billy Joe, was sitting on the porch. The officers told him that they had been there before and that they wanted three or four gallons of whiskey. He stated that he would get them some, and started to get into his car. Mrs. Kivette then drove into the yard, and he took that car instead, Mrs. Kivette going into the house. He returned very shortly, and the officers bought three gallons, paying for them with a twenty-dollar bill and a five-dollar bill, the serial numbers of which they had written down. Billy Joe gave them four one-dollar bills in change, and they left.

They returned in about a half hour with six other officers, who had been waiting down the road, and with warrants for the arrest of Dow Kivette and Lima Lynn Kivette. The officers drove into the yard in three cars, and Mrs. Kivette, who had been sitting in a chair on the lawn, stood up and began walking toward the house. Deputy Marshal Walker, who had the warrants, followed her toward the front door. He called to her but she kept moving up the steps and through the door. Walker identified himself and explained that he had a warrant for both Mr. Kivette and herself.

To this she answered, "Well, my husband is back here; I'd rather you talk to Dow," and latched the screen. Then she went back into the house.

Walker called to the other officers to go around to the back, and pulled the screen door open, thereby tearing the hook off. The house was dark, and Walker could not see where Mrs. Kivette had gone, but in a moment there was the sound of breaking glass in the back of the house. The officers who had gone to the back door saw a liquid dripping onto the ground under the back of the house, and Causey, catching it in his fingers, noted that it smelled and tasted like moonshine. At the sound of breaking glass, Walker moved through the house and encountered Mrs. Kivette as she emerged from the bathroom. He testified:

"Mrs. Kivette came out of the bathroom and the door was not plumb, so as she turned it loose it just swung open a few inches, some twelve or eighteen, and I threw my flashlight there and saw broken glass where it looked like she had busted two or three half gallon jars and there was a strong odor of whiskey all over the place."

Then Mrs. Kivette was placed under arrest. When they were outside, Walker looked through her purse and found the twenty and the five-dollar bill with which Hollingsworth had earlier paid for the whiskey.

The indictment was in ten counts. Counts one and two charged Dow Kivette with possessing and transporting nontaxpaid distilled spirits on June 23, 1954. Counts three, four and five charged Dow Kivette and Lima Lynn Kivette with possessing, transporting, and selling nontaxpaid distilled spirits on June 29, 1954. Counts six, seven and eight charged Billy Joe Kivette with possessing, transporting, and selling nontaxpaid distilled spirits on July 1, 1954. Counts nine and ten charged Lima Lynn Kivette with possessing and selling nontaxpaid distilled spirits on July 1, 1954. With the consent of the United States Attorney, a

severance was granted for Billy Joe Kivette, and he was separately tried and convicted of the offenses charged against him. The jury in the instant case acquitted Dow Kivette of the offense charged in count two, transporting nontaxpaid distilled spirits on June 23, but convicted the appellants on all other counts.

■ The appellants urge, first, that the indictment was defective for misjoinder of offenses and defendants. The issue is, of course, governed by Rule 8(a) and (b) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., set out below.[2] The appellants' argument that these offenses could not be charged in one indictment because the sales on different dates were separate transactions ignores the provision in Rule 8(a) that two or more offenses may be joined in one indictment if they are "of the same or similar character." The construction for which appellants contend, i. e., that separate offenses cannot be joined unless it is alleged that they were part of a continuous transaction or conspiracy, would in effect read these words out of the Rule.

■ They urge more strongly that the indictment was defective for misjoinder of defendants because both defendants were not joined in each count thereof. This argument is, on its face, a contradiction of the second sentence of 8(b), which provides that "all of the defendants need not be charged in each count." The latitude thus allowed in joining defendants is, of course, limited by the preceding sentence of (b) to defendants who are "alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." If the requirement that the defendants must be alleged to have participated in the same series of acts or transactions is regarded as requiring that the same defendants must be charged in every criminal act of a series of acts or transactions, it would negate the second sentence of 8(b) allowing the omission of a defendant or defendants from any count. The problem, therefore, is in harmonizing these two sentences into an effective rule.

In Scheve v. United States, 87 U.S. App.D.C. 289, 184 F.2d 695, Chief Judge Edgerton of the District of Columbia Circuit broadly construed "participated" in Rule 8(b) as allowing joinder of all defendants engaged in a connected course of conduct out of which arose separate crimes alleged against different persons. It is not necessary for us to attempt a comprehensive definition of participation, however, except to note that it has a broader scope than solely performing acts rising to the level of crimes, because the type of joinder involved here has been upheld by the courts on several occasions. United States v. Harris, 7 Cir., 211 F.2d 656; Scheve v. United States, supra; Todd v. United States, 5 Cir., 48 F.2d 530.

■ The appellants also specify error in the admission of testimony regarding the broken half gallon jugs of whiskey and the two bills taken from Mrs. Kivette's handbag. The action by the arresting officers here has a parallel in the leading case of Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145. There officers watching through the windows of defendant Alba's house

---

2. *"Rule 8. Joinder of Offenses and of Defendants*

"(a) *Joinder of Offenses.* Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

"(b) *Joinder of Defendants.* Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count."

saw small packages produced for delivery, and the exchange of money. Upon the apparent consummation of the sale, they rushed in and arrested all those present. The money was found on Alba's person and packages of narcotics were observed on the table. This evidence was held admissible. It cannot be argued seriously that the officers here had no right to look through Mrs. Kivette's purse as a search incident to a lawful arrest. Moreover, the observation of other matters of evidentiary interest, done without leaving the room in which the arrest was made, is well within the limitations imposed on searches made incident to arrest. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653.

▮▮▮▮ The appellants' contentions that they were entrapped as a matter of law, and that the court's charge on this issue was erroneous, are likewise without merit. The court instructed that

"If a person is already engaged in the violation of the law and if he is simply awaiting an opportunity to violate it further, and if an officer or anyone else comes along and affords the opportunity that he is ready to accept and take advantage of, then there is no entrapment. If, on the other hand, a person is not engaged in the violation of the law and is not presently thinking about or entertaining any notions about violating the law, and if an officer or someone else comes along and originates the idea and implants the idea in that person's mind, and that person who theretofore hadn't thought about it, and wasn't thinking about violating the law, yields to that suggestion and acts upon the idea implanted in his mind by the third person, then that would be entrapment, and a jury ought not to convict in such a case."

The question of entrapment frequently arises in prosecutions for illegal sales, such as of narcotics or nontaxpaid whiskey. It is, of course, irrelevant in these cases that government undercover agents or informers present themselves to sellers of illicit products in disguise, as long as the disguise itself does not have the effect of motivating an otherwise innocent person to commit crime. The question whether a defendant was lured by the agent into crime or was merely afforded an apparently safe opportunity to commit it is one of fact for the jury to decide. As analyzed by Judge Learned Hand:

"Therefore in such cases two questions of fact arise: (1) did the agent induce the accused to commit the offence charged in the indictment; (2) if so, was the accused ready and willing without persuasion and was he awaiting any propitious opportunity to commit the offence. On the first question the accused has the burden; on the second the prosecution has it." United States v. Sherman, 2 Cir., 200 F.2d 880, 882–883.

▮▮▮ The fact that the purchaser appears in an army uniform is only one element which goes into the jury's consideration of these questions. Goldstein v. United States, 7 Cir., 256 F. 813. Moreover, there need not be evidence submitted to the jury that agents had knowledge of illegal selling before they approached one whom they suspected of it. Hadley v. United States, 8 Cir., 18 F.2d 507. Evidence of a willingness or "ready complaisance" to deal is sufficient. United States v. Becker, 2 Cir., 62 F.2d 1007, 1008. There was abundant evidence here upon which the jury could find that the initial reluctance of Dow Kivette to sell to Hollingsworth was the result of a violator's caution rather than an innocent man's scruples. Moreover, there is no respect in which the court's instructions to the jury on this issue stated the law in a manner prejudicial to the appellants.

▮▮▮▮ The appellant Dow Kivette's assertion that he was forced to give testimony against himself, in violation of the Fifth Amendment, arises out of an

incident which occurred at the outset of the trial. Appellants' counsel was of the view that some of the prosecution's witnesses would be unable to identify Dow Kivette. When the case was called, Dow Kivette's brother was sitting at the counsel table with Mrs. Kivette and their counsel. Dow Kivette was present in the courtroom, but was not seated at the table. The marshal asked the defendants to stand, and their counsel replied that they would waive arraignment. The United States Attorney, however, insisted on arraigning Dow Kivette. Kivette's brother and the appellant's counsel then arose and approached the bench. Upon being asked if he was Dow Kivette, the brother answered no, and appellants' counsel stated, "There he is," indicating the appellant, who was standing some distance away. After the indictment was read, the court asked the appellant if he was the Dow Kivette named in the indictment and whether there was any other Dow Kivette known to him. Upon being satisfied that the persons named in the indictment were ready for trial, the court ordered that the proceedings continue.

The appellant's contention that his right to refuse to give self-incriminating testimony was thus abridged is wholly without foundation. The requirement that an accused present himself for trial is one of the earliest established in the criminal law.[3] The modern rule is that he must also identify himself, if so required. Swingle v. United States, 10 Cir., 151 F.2d 512.

Finally, appellant Lima Lynn Kivette assigns error in the refusal of the court to charge that a wife acting in company with her husband in the commission of a felony other than treason or homicide is conclusively presumed to act under his coercion, and is therefore without criminal intent. A similar instruction was refused in Conyer v. United States, 6 Cir., 80 F.2d 292,

and this court acted in accord in Ansley v. United States, 5 Cir., 135 F.2d 207. It is clear that the common-law fiction of unity of husband and wife has no place in modern criminal law. Thompson v. United States, 5 Cir., 227 F.2d 671; Johnson v. United States, 81 U.S.App. D.C. 254, 157 F.2d 209. The instruction was correctly refused.

The judgments are

Affirmed.

---

3. 2 Pollock and Maitland, History of English Law Before the time of Edward I, Ch. IX, § 3.