**FLUOR WESTERN, INC., Plaintiff-Appellant,**

v.

**G & H OFFSHORE TOWING CO., Inc., Defendant-Appellee.**

**No. 71–1420**
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

July 8, 1971.

Rehearing and Rehearing En Banc
Sept. 21, 1971.

---

\* [1] Rule 18, 5th Cir.; See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

James E. Ross, Ross, Griggs & Harrison, Houston, Tex., for plaintiff-appellant.

M. L. Cook, Ted C. Litton, Houston, Tex., for defendant-appellee; Royston, Rayzor & Cook, Houston, Tex., of counsel.

Before THORNBERRY, MORGAN and CLARK, Circuit Judges.

PER CURIAM:

After considering the declarations made by the appellant in response to the district court order and for the reasons stated by the able District Court Judge in his memorandum and order of December 17, 1970, hereto appended as Exhibit A, we are in accord that no genuine issue exists as to any material fact and, on the facts established in this case, the appellee is entitled to judgment as a matter of law. The district court did not err in granting a motion for summary judgment on behalf of appellee.

Judgment affirmed.

EXHIBIT "A"

In the United States District Court for the Southern District of Texas Holding Sessions at Houston

Civil Action No. 70–H–208

Fluor Western, Inc.,
versus
G & H Offshore Towing Co., Inc.

MEMORANDUM AND ORDER
(Filed December 22, 1970)

Defendant, G & H Offshore Towing Company, has filed a motion for summary judgment and/or for a dismissal in this action to recover damages for the loss of cargo which resulted from the sinking of the defendant's barge, the Barge P. 102. Although the complaint names Fluor Western, Inc., the cargo owner, as the plaintiff, defendant asserts that the real parties in interest are underwriters who insured the cargo and who have paid Fluor Western, Inc. for

its cargo losses. Defendant urges that these underwriters cannot maintain this action for the reason that rights to subrogation have been contractually waived.

Defendant's theory of contractual waiver of subrogation is based upon two contractual provisions. In one contract, entered into by Pace (the barge owner) and the defendant, G & H Offshore Towing Co., for the towage of the barge on which Fluor's cargo was ladened, defendant alleges that the following statement appears:

> Fluor agrees to provide and maintain in full force and effect at its cost and expense cargo insurance for the full value of the cargo during the transportation hereby undertaken. Said policy of cargo insurance shall contain a waiver of subrogation * * * against Transoceanic, Ruben C. Pace, d/b/a Pace Marine Service, and the Barges P. 101 and P. 102, their owners, charterers, and operators.

Defendant also alleges that the insurance policy upon which this suit is maintained includes the following language, "Privilege is granted to the Assured to waive rights of subrogation against barge owners and towers."

The defendant's allegations that this constitutes a subrogation action by certain underwriters has not been expressly admitted by the plaintiff or otherwise expressly established in the record of this case. Nor does it appear that the operative facts relevant hereto—whether the contracts referred to above were entered into and, if so, whether the quoted language was incorporated into such contracts as alleged—have been expressly admitted or otherwise established. Apparently, however, no dispute over these matters exists. Otherwise, the plaintiff doubtlessly would have brought such matters to the attention of the court. Accordingly, the court will proceed to consider the issues presented and will assume (1) that this is a subrogation action as alleged and (2) that the language quoted above does appear in the towage and insurance contracts entered into by the parties, as alleged. Furthermore, these matters will be deemed admitted unless the court is notified within 15 days after the filing of this Memorandum and Order that these factual matters are disputed.

The plaintiff has countered defendant's motion with the argument that contractual provisions such as are involved here which absolve towage contractors of responsibility for negligence are void as against strong public and congressional policy. As support for this proposition, plaintiff cites Bisso v. Inland Waterways Corp., 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 911; Dixilyn Drilling Corp. v. Crescent Towing and Salvage Co., 372 U.S. 697, 83 S.Ct. 967, 10 L.Ed.2d 78 (1963), 46 U.S.C. § 1303(8) (COGSA) and 46 U.S.C. § 190 (the Harter Act). But defendant takes the position that a waiver of subrogation, as is involved here, should be distinguished from agreements to release from responsibility for negligent towage, as was the case in *Bisso* and *Dixilyn,* and in absence of controlling statutory authority to the contrary, urges that agreements of the former type should not be held against an overriding public policy consideration. Defendant further points out that neither COGSA nor the Harter Act applies to the towage transactions involved in this case and, therefore, any such statutory policy against such contractual provisions in other situations that are expressed in either of these acts cannot apply here.

Defendant has cited Phoenix Ins. Co. v. Erie & Western Transp. Co., 117 U.S. 312, 6 S.Ct. 750, 29 L.Ed. 873 (1886) in support of its position. The Phoenix case is not directly in point, dealing with a stipulation by the shipper and carrier that the carrier would be allowed the benefits of insurance obtained by the shipper, rather than a waiver of subrogation. Also, the age of that decision would cause its continuing precedential value to be questionable in absence of reaffirmation by later cases.

Defendant seemingly places greatest reliance upon a 1962 decision of the

Fifth Circuit Court, Great American Ins. Co. v. Gulf Marine Drilling No. 1, 302 F.2d 332. In that case a hull insurer was held to have waived its right to subrogation against any corporation for or with whom it was operating and therefore was not allowed to recover amounts paid under the policy following a collision between the insured vessel and a drilling barge with which it was operating. The case, however, did not involve a tug and its tow, as does this case, and was not, therefore, necessarily subject to the same policy considerations underlying *Bisso* and *Dixilyn*. Also, perhaps the Court of Appeals for the Fifth Circuit was influenced by the fact that both vessels in the *Gulf Marine* case were directly engaged in drilling operations and related services for the same corporation. These observations are not meant to indicate that this court feels that the *Gulf Marine* case was incorrectly decided, but only to set forth two rather obvious reasons why that case may not be of controlling importance here.

It is true that no applicable statute invalidates the waiver of subrogation clause involved in this case. Although neither the Carriage of Goods by The Sea Act nor the Harter Act applies here, prohibitions against such agreements that may be included in those acts conceivably could represent statutory expressions of a more broadly applicable common-law public policy against such agreements. But the juristic literature sheds no light on the relationship, if any, between such statutory provisions and public policy considerations.

As noted earlier, the Supreme Court's decision in *Bisso* involved a release from negligent towage, where liability for negligent towage was merely shifted from the tug to the towed object. In declaring such contracts in the towage industry void as against public policy, Justice Black, writing the opinion for the court, reasoned that there have been two main reasons for the question and application for the rule: "(1) to discourage negligence by making wrongdoers pay damages, and (2) to protect those in need of goods or services from being overreached by others who have power to drive hard bargains. Justice Frankfurter, with whom Justices Reed and Burton joined in dissenting, criticized the court's premise that any such rule had been established, and, to the contrary, concluded that the reported decisions suggest quite the opposite. Additionally, Justice Frankfurter felt that the Court's desire to free the maritime business from the "monopolistic compulsions" of the tug industry, although a meritorious undertaking if monopolistic conditions did in fact exist, was unjustified in that case for "[n]othing in the record hint[ed] at any inequality of bargaining power, between the parties," and there was no "basis for taking judicial notice that the tug industry as an industry [was] in concentrated ownership."

Although subject to the criticism that prior cases were improperly construed and perhaps also that the case lacked sufficient empirical evidence on the question of the relative bargaining positions of the contracting parties in these towage arrangements, *Bisso* stands as the Court's most recent pronouncement on this point, the court having merely followed *Bisso* without elaboration in its 1963 per curiam decision in *Dixilyn*. Justice Harlan, in a separate statement, did write in *Dixilyn* that he "would prefer to see *Bisso* reconsidered, believing * * * that it was wrongly decided," but this invitation has yet to be accepted.

It appears that the overriding consideration in *Bisso* was the supposed inequality of the bargain position of the tug industry and those in need of its services. The other reason stated in *Bisso* for the rule there announced—to discourage negligence by making wrongdoers pay damages—was, I believe, of limited importance and merely served to support the decision, for, in absence of an unconscionable disparity in bargain positions, contracting parties should be free to distribute liabilities and costs as they wish.

Perhaps monopolistic conditions which would cause *Bisso*-type bargaining in-

equality to exist and which were at least felt to be present at the time the *Bisso* record was developed no longer, if they ever did, exist to such an extent that those contracting with the industry are still in need of judicial relief from adhesive clauses in these contracts. Seemingly, if respective bargaining positions are fairly equivalent so that overreaching is no longer a significant commercial probability, then *Bisso* should fall (subject to later resurrection if earlier conditions should again become prevalent) and the full bargaining area should then be allowed. Whether the respective bargaining positions of the contracting parties in these transactions remain unconscionably disparate would be a factual matter to be developed in the record of each case.

■ Adhesive clauses, exacted by the overreaching of a contracting party who is in an unfairly superior bargaining position, are always subject to the defense of unconscionableness. Public policy invalidates such clauses, whether in a *Bisso* context or otherwise. Thus, if evidence were to be developed in this case showing the waiver of subrogation clauses involved here to have been exacted by such overreaching, then it would be irrelevant whether or not *Bisso* applies here. Similarly, if the evidence were to show that in the present conditions of the industry no disparate relationship exists as to the respective bargaining positions of contracting parties in these matters, then the waiver of subrogation clauses would constitute a valid defense, regardless of whether or not a *Bisso* type transaction was involved. In this latter situation, the evidence would cause *Bisso* to no longer be the law, even if it otherwise would have invalidated the clause, and if it was not a *Bisso* transaction, no change in the law would be necessary—there would simply be no reason to apply the invalidating public policy consideration.

■ It is, nevertheless, important to determine whether *Bisso* would apply to the situation here. If *Bisso* does apply, then *the clauses would be unenforceable,*

unless the defendant could show that the reasons underlying *Bisso* no longer exist (presumably, this would revolve around whether or not the bargaining position of the industry was at the time of the contract, unfairly disparate). On the other hand, if this is not a *Bisso* transaction, then the opposite would be true— *the clause would be enforceable,* unless plaintiff could show that the clauses resulted from an unconscionable inequality in bargaining positions. The difference being, in the *Bisso* situation, there has been a judicial declaration of an invalidating public policy in all such cases, whereas in non-*Bisso* transactions, the invalidating public policy must be shown to have been violated in each case.

The *Bisso* doctrine should not control the enforceability of the clauses involved in this case. The reasons are, I believe, three-fold:

(1) Unlike the situation in *Bisso*, the plaintiff did not waive its right to proceed. against any party responsible for the cargo loss. Although the cargo owner, pursuant to the contract, procured insurance fully covering the cargo being shipped, and presumably was reimbursed by insurance proceeds for the loss incurred, it nevertheless had the right to proceed against the barge, tug and their owner, charterers and operators if the insurance underwriters had, for whatever reason, failed to pay. With respect to the rights of the cargo owner, the carriage contract did not exculpate these potential defendants, protect them from suit by the cargo owner, or fix their respective liabilities, although, of course, as a practical matter their chances of being sued by the cargo owner were indeed small in view of the fact that the cargo owner was protected by the insurance.

(2) Actually, no rights at all were waived by the carriage agreement itself. The cargo owner agreed to procure cargo insurance with a waiver of subrogation clause, but the insurance underwriters' subrogation rights were waived only by a later and independent agreement reached between the cargo owner, as the

insured, and the underwriters. It is not alleged that the execution of the carriage agreement bound any insurance underwriters in any manner at all. It is difficult to imagine how any monopolistic condition that may have existed in the tug and barge industry could have been exploited to compel the underwriters to agree to waive their rights of subrogation. This is not to say that such could not have been the case, but only that it was not so as a matter of law. A factual showing would have to be made.

(3) The only thing that could conceivably have been adhesive in the towage contract involved here would be the cargo owner's agreement to pay the premiums of the insurance that was to be procured. I do not think, however, that the public policy expressed in *Bisso* requires that any particular party should necessarily bear the cost of such insurance, particularly when the party that does bear the cost had an insurable interest in the cargo and is to be the named insured, as is the case with the plaintiff in this suit. *See,* Great American Insurance Co. v. Gulf Marine Drilling No. 1, 302 F.2d 332 (5th Cir. 1962).

Thus, the waiver of subrogation clause involved herein is not invalidated by any statutory prohibition or the *Bisso* rationale. The only overriding public policy that would appear to have possible applicability would be the policy against adhesion contracts. But, as *Bisso* does not apply, the issue of the adhesiveness can only be one of fact, and not of law, with the burden of proof falling upon the party seeking to have the clauses declared void. The plaintiff shall be directed therefore to indicate whether plaintiff intends to develop such evidence.

By reason of the foregoing, the court orders the following: (1) that defendant's assertions that this is a subrogation action and that the insurance waiver of subrogation provisions did appear in the contracts will be deemed admitted unless the plaintiff files a writing with the court within 15 days which states that these matters are in dispute; and (2) the plaintiff is directed to file with the court a writing within 15 days following the date of the entry of this Memorandum and Order indicating whether or not plaintiff wishes to develop, as a defense to defendant's motion, evidence showing that the waiver of subrogation agreement involved here was exacted in violation of the policy against adhesive contracts. If a factual issue as to the matters in (1) above are not raised in the manner and within the time provided for, and if plaintiff does not indicate that plaintiff wishes to develop evidence showing that the waiver of subrogation agreement involved herein is invalid for public policy reasons, as stated in (2) above or otherwise, then defendant's motion to dismiss will be granted.

The clerk is directed to enter this Memorandum and Order and to provide counsel with true copies hereof.

Signed this 17th day of December, 1970.

WOODROW SEALS
United States District Judge
In the United States District Court for the Southern District of Texas Holding Sessions at Houston

Civil Action No. 70–H–208

Fluor Western, Inc.,
versus
G. & H Offshore Towing Co., Inc.

ORDER GRANTING SUMMARY JUDGMENT
(Filed January 11, 1971)

In view of the declarations made by plaintiff in plaintiff's Response to the Court's Order of December 17, 1970 and for reasons stated in the court's Memorandum and Order of December 17, 1970, no genuine issue exists as to any material fact and on the facts established in this case the defendant is entitled to judgment as a matter of law. Accordingly, it is hereby ordered, adjudged and decreed that the motion of defendant G & H Offshore Towing Company, Inc.

to Dismiss and/or for Summary Judgment is granted. Costs are to be taxed against the plaintiff.

Counsel for the defendant is directed to submit an appropriate judgment.

The clerk is directed to file this Order and to provide counsel of record with true copies.

Signed this the 11th day of January, 1971.

WOODROW SEALS
United States District Judge

### ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.