340 A.2d 440

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Benjamin SANTIAGO et al.**

**COMMONWEALTH of Pennsylvania**

v.

**Sheila Ann SANTIAGO, Appellant.**

Supreme Court of Pennsylvania,

Argued April 15, 1974.

Decided May 13, 1975.

218

F. Emmett Fitzpatrick, Jr., Dist. Atty., Richard A. Sprague, First Asst. Dist. Atty., David Richman, Asst. Dist. Atty., Chief, Appeals Div., Maxine J. Stotland, Asst. Dist. Atty., Abraham J. Gafni, Deputy Dist. Atty. for Law, Philadelphia, for appellant.

David Weinstein, Philadelphia, for appellees, Benjamin Santiago and Isidoro Santiago.

Donald M. Moser, Philadelphia, for appellees, Manuel Santiago and Sheila Santiago.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

NIX, Justice.

Appellees, Sheila, Manuel, Isidoro and Benjamin Santiago were convicted by a judge sitting without a jury in Philadelphia County. All four appellees were found guilty of illegal possession of heroin and conspiracy.[1] Each was sentenced to a prison term of two to five years. The indictments were laid under The Drug Device and Cosmetic Act, September 26, 1961, P.L. 1664, § 1 *et seq.*, 35 P.S. § 780–1 *et seq.*

On appeal the Superior Court affirmed the convictions. *Commonwealth v. Santiago*, 223 Pa.Super. 493, 305 A.2d 378 (1973). That court, however, vacated the sentences and remanded the cases for resentencing under the new Controlled Substance, Drug, Device and Cosmetic Act, April 14, 1972, P.L. 165, No. 64, § 1 *et seq.* effective June 14, 1972, 35 P.S. § 780–101 *et seq.* (Supp.1974–75). The Superior Court held that the sentences were illegal on the premise that the judge should have applied the

1. Act of September 26, 1961, P.L. 1664, § 4(q), 35 P.S. § 780–4(q). After the Assistant District Attorney conceded the Commonwealth's weak case on the charges of sales or attempted sales of illegal narcotics, the trial court upon proper motions granted directed verdicts for the Santiagos on those bills of indictments charging sales or attempted sales of narcotics.

sentencing provisions of the new Drug Act of 1972. Because the Superior Court found the analogous crime in the new Drug Act to be simple illegal possession of heroin, their order would result in a sentence of not more than one year for each individual.[2] The Commonwealth appealed from the order of the Superior Court and we granted allocatur limited to a determination of which Drug Act applies for the purpose of sentencing. We also permitted Sheila Santiago to raise the issue of the refusal of the trial court to recognize the defense of coverture.[3]

On January 8, 1972, five officers of the Philadelphia Police Department went to the home of Manuel and Sheila Santiago to serve a search warrant. When the officers knocked on the door, Sheila Santiago appeared in an upstairs window and inquired as to what the officers

2. Controlled Substance, Drug, Device and Cosmetic Act, April 14, 1972, P.L. 165 No. 64, § 13, effective June 14, 1972, 35 P.S. § 780–113 (Supp.1974–75).
"(a) The following acts and the causing thereof the Commonwealth are hereby prohibited:

. . . . . . . . . . .

(16) Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act.

. . . . . . . . . . .

(b) Any person who violates any of the provisions of clauses (1) through (20) of subsection (a) shall be guilty of a misdemeanor, and except for clauses (4), (6), (7), (8), (9) and (19) shall, on conviction thereof, be sentenced to imprisonment not exceeding one year or to pay a fine not exceeding five thousand dollars ($5,000), or both, and for clauses (4), (6), (7), (8), (9) and (19) shall, on conviction thereof be sentenced to imprisonment not exceeding three years or to pay a fine not exceeding five thousand dollars ($5,000), or both; but, if the violation is committed after a prior conviction of such person for a violation of this act under this section has become final, such person shall be sentenced to imprisonment not exceeding three years or to pay a fine not exceeding twenty-five thousand dollars ($25,000), or both . . ."
There is nothing in the record to suggest that these defendants had a prior record for narcotic convictions.

3. Sheila Santiago is the wife of Manuel Santiago.

wanted. When Officer Ira Andrews announced his identity and purpose, she then called her husband who asked the same question. Officer Andrews answered them, but when the door was not opened, the officers forcibly entered with the use of a sledge hammer and ran upstairs to the second floor rear bedroom where they found the four Santiagos. As Officer Andrews entered the room, he saw Sheila Santiago throw something out of an open window. Upon retrieving it, the package was identified as a bundle of 25 packets of heroin. Seventeen other bundles were found on the bed, around which the other three appellees were seated. Also on the bed were strainers, spoons, razor blades, hundreds of empty glassine packets, and rubber bands. Two additional pouches containing another half a pound of heroin were found under the bed. The trial judge characterized this as a wholesale drug operation for cutting and bagging heroin which had an estimated "street value" exceeding $250,000.00.

After a review of the record we are satisfied that the order of the Superior Court must be reversed and the judgment of sentence of the trial court reinstated.

The new Drug Act applies to all cases not final as of June 14, 1972, which is the effective date of the Act.[4] The Santiagos were not sentenced until October 1972. At that time their case was not final when the new Drug Act went into effect. *Commonwealth v. Goodman*, 454 Pa. 358, 311 A.2d 652 (1973); *Commonwealth v. Thomas*, 450 Pa. 548, 301 A.2d 359 (1973). *Cf. Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); *Commonwealth v. Little*, 432 Pa. 256, 248 A.2d 32 (1968).

4.  Act of 1972, *supra* at § 39(a), 35 P.S. § 780–139(a) provides:
    "Prosecution for any violation of law occurring prior to the effective date of this act is not affected or abated by this act. In any case not yet final if the offense is similar to one set out in this act, the penalties under this act apply if they are less than those under prior law." (Effective "immediately" pursuant to Act of 1972, *supra* at § 44, 35 P.S. § 780–144.

In *Commonwealth v. Thomas, supra,* we devised a formula by which we would determine whether the Drug Act of 1972 would affect a defendant's sentence. We stated:

"Three elements must be present before a pending prosecution can be governed by the new Controlled Substance Act: (1) the original offense charged must be similar to one set out in the new Act; (2) the penalties provided in the new Act must be less than those established by the prior law; and (3) the case must not be finally litigated." *Id.* 450 Pa. at 555, 301 A.2d at 364.

The presence of the third element has been conceded. The critical issue presented in this appeal is whether the original offense charged is similar to one set out in the new Act. And, if the preceding question is answered in the affirmative, does the new section provide a greater punishment than that permitted under the former Act.

■ Initially, we note that heroin is a "controlled substance" regulated by section 4 of the Act of 1972, 35 P.S. § 780–104(1)(ii)(10). The original offense with which the Santiagos were charged and of which they were convicted was illegal possession of heroin under section 4(q) of the Act of 1961, 35 P.S. § 780–4(q).[5] The Superior Court found that the analogous offense under the new Act was "knowingly or intentionally possessing a controlled . . . substance."[6] When comparing the two laws and constructing the word "similar" as provided in section 39(a) of the Act of 1972, we need not find the offenses identical. It is sufficient that the characteristics of the offense charged be alike, resemble or

5.  Act of 1961, *supra* at § 4(q), 35 P.S. § 780–4(q):
    "The possession, control, dealing in, dispensing, selling, delivery, distribution, prescription, trafficking in, or giving of, any dangerous or narcotic drug."

6.  Act of 1972, *supra* at § 13, 35 P.S. § 780–113(a)(16); see *supra* note 2.

correspond to the new law.  See *Commonwealth v. Simpson,* 222 Pa.Super. 296, 294 A.2d 805 (1972); *Commonwealth v. Shaffer,* 175 Pa.Super. 100, 103 A.2d 430, allocatur denied, 175 Pa.Super. XXV (1954).  Cf. *Commonwealth v. Pope,* 455 Pa. 384, 317 A.2d 887 (1974).

The Commonwealth, appellant herein, contends that because of the vast quantity of heroin and paraphernalia found in the possession of the Santiagos, the crime involved here is analogous to "possession with intent to deliver"[7] under the Act of 1972.  The Santiagos argue that a finding of guilt for illegal possession of heroin under the Act of 1961 is similar to the offense of "simple possession", that is, knowing and intentional possession of heroin under the new Drug Act.  They note that there are no quantitative limits in either the old Act or the new Act to guide the courts or the prosecution to distinguish the two offenses.  Appellees further contend that to find them guilty of "possession with intent to deliver" would create an additional offense for which they were not tried.  We find the Santiagos' arguments unpersuasive.

The evidence presented surrounding the arrests justified a finding that the possession was for a purpose other than personal use.  The presence of $250,000.00 worth of heroin, the glassine packets, rubber bands, razor blades and other paraphernalia, unquestionably indicated a planned future transfer either by sale or other distribution.

The Federal Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C.A. § 841(a) contains a provision similar to the new Pennsylvania legislation.[8]  It provides in pertinent part:

"(a)  Except as authorized by this title, it shall be unlawful for any person knowingly or intentionally—(1)

7.  *Id.* at § 13, 35 P.S. § 780-113(a)(30).

8.  Pennsylvania's legislation is an adoption of the Uniform Controlled Dangerous Substances Act.  The Uniform Act was drafted

to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance, . . ."

That Act has been consistently interpreted by the federal courts to allow the quantity and value of the narcotic drug as circumstantial evidence to infer the purpose and intent with which the narcotic drug is possessed. The Fifth Circuit reasoned:

"The question of the validity of the inference turns on whether the amount of cocaine was such as will support an inference of intent to distribute as distinguished from mere possession for personal use." *United States v. Mather,* 465 F.2d 1035, 1037 (5th Cir. 1972).

See also, *United States v. Echols,* 447 F.2d 37 (8th Cir. 1973), *cert. denied,* 414 U.S. 825, 94 S.Ct. 128, 38 L.Ed. 2d 58 (1973); *United States v. Ortiz,* 445 F.2d 1100 (10th Cir.), *cert. denied,* 404 U.S. 993, 92 S.Ct. 541, 30 L.Ed.2d 545 (1971); *United States v. Cerrito,* 413 F.2d 1270 (7th Cir. 1969), *cert. denied,* 396 U.S. 1004, 90 S. Ct. 554, 24 L.Ed.2d 495 (1970).

In *United States v. King,* 485 F.2d 353 (10th Cir. 1973), that court found:

"The 'intent' with which a controlled substance is possessed is generally established through circumstantial evidence and in this regard we have held that the quantity of the drug possessed is a circumstance which may permit the inference that the possessor had an intent to sell, deliver or otherwise distribute. . . . The statute clearly, and without vagueness, makes un-

to achieve a coordinated, codified uniformity between state and federal legislation and enforcement. With the enactment of the federal Act of 1970, it was necessary that the states revise and update their drug laws. See generally, Uniform Laws Annotated, 9 U.L.A. 145. To date, fifty-one jurisdictions have adopted either the Uniform Controlled Dangerous Substances Act or the Uniform Narcotic Drug Act. Pennsylvania Uniform Controlled Substance, Drug, Device and Cosmetic Act, Notes, (Supp.1974–75).

lawful the possession of any controlled substance with an intent to distribute. *The question as to the quantity which would permit the inference that the possessor had an intent to distribute is evidentiary in nature and necessarily depends upon all the facts and circumstances of the case at hand, and mention thereof in the statute is entirely unnecessary.*" Id. at 356–357. (Emphasis added).

■ Under the facts of this case, we conclude that the offense for which the appellees were convicted is analogous to possession of heroin with intent to deliver and not simple possession of heroin.

Under *Thomas, supra,* standards and the statutory language, where the penalty under the new Drug Act is greater than under the prior law, the new Drug Act sentencing provisions are inapplicable. The penalty under the Act of 1972 for possession with intent to deliver requires the imposition of sentence of up to fifteen years in prison or a fine up to Two Hundred and Fifty Thousand Dollars ($250,000.00).[9] This is a greater penalty than that which existed under prior law.[10] Accordingly, the Santiagos may not receive the benefits of the Controlled Substances Act of 1972. We therefore reinstate the sentence imposed by the trial judge under the former Act.

Appellee, Sheila Santiago, individually contends that the common law doctrine of coverture, or "coercion of wife by husband" Perkins, *Criminal Law,* 909–918 (2d ed. 1969) should be applied in her case, thereby excusing her criminal misconduct. Historically, a married woman committing a crime in her husband's presence, created a rebuttable presumption that the wife was an unwilling participant. 9 *Wigmore on Evidence,* § 2514, at 425, (3d

---

**9.** Act of 1972, *supra* at § 13, 35 P.S. § 780–113(f)(1).

**10.** Act of 1961, *supra* at § 20, 35 P.S. § 780–20(c) provides a sentence of not less than two nor more than five years and a fine not exceeding Two Thousand Dollars ($2,000.00).

ed. 1940). The concept of coverture originated with the common law fiction of a unity of husband and wife.

"The so-called 'doctrine of coercion' has been attributed to the 'legal identity of husband and wife,' to the 'duty of obedience to her husband;' to the original status of the wife as only 'the servant of the husband,' or a 'marionette, moved at will by the husband;' to the power of the husband to chastise the wife; to the 'matrimonial subjection of the wife to her husband;' to the 'power and authority which her husband has over her;' and even to a 'relic' of a belief in the ignorance and pusillanimity of women which is not, and perhaps never was, well founded." *Perkins, supra* at 910, (footnotes omitted).

This theory is obviously outmoded and absent statutory provisions to the contrary, the question must be resolved in the light of present day considerations rather than considerations more appropriate to the Middle Ages.

The independence of women in political, social, and economic matters renders the doctrine of coercion outdated and inapplicable to modern society. As we have noted in another context:

"Such a presumption is clearly a vestige of the past and incompatible with the present recognition of equality of the sexes. The law must not be reluctant to remain abreast with the developments of society and should unhesitatingly discard former doctrines that embody concepts that have since been discredited." *Conway v. Dana,* 456 Pa. 536, 539, 318 A.2d 324, 326 (1974).

See also, Pa.Const. art. I, § 27; Married Women's Act, July 15, 1957, P.L. 969, No. 417, § 1 *et seq.*, 48 P.S. § 32.1 *et seq.*

Our Court in *Commonwealth v. Lawson et ux.,* 454 Pa. 23, 309 A.2d 391 (1973) repudiated the legal fiction of

the unity of husband and wife. We there held that both a husband and a wife would properly be convicted of conspiracy. The rationale for the abrogation of the common law rule was pertinently stated:

> "Some authorities also speak of the natural state of a wife's submissiveness to her husband and conclude that because of such natural state, the wife, lacking a will of her own, could not possibly formulate the necessary criminal intent to be guilty of conspiracy with her husband. There is no reason to perpetuate the fiction that husband and wife are one person with one will in the eyes of the law. They are not. They are separate individuals. Each has a distinct personality and a will which is not destroyed by any process of spousal fusion. Each acts separately and should be separately responsible for their conduct. We have so recognized in other areas of the law. Women should not lose their identity—or their responsibility—when they become wives. The status of wife or husband should not relieve any person of one's obligation to obey the law." *Id.* at 31, 309 A.2d at 396.

Cf. *United States v. Dege,* 364 U.S. 51, 80 S.Ct. 1589, 4 L.Ed.2d 1563 (1960); *Kivette v. United States,* 230 F.2d 749 (5th Cir. 1956); *United States v. Anthony,* 145 F. Supp. 323 (M.D.Pa.1956) (and cases cited therein); *Conyer v. United States,* 80 F.2d 292 (6th Cir. 1936); *Commonwealth v. Zankl,* 53 D. & C.2d 230 (1970); *Commonwealth v. Gober,* 35 D. & C.2d 709 (1966).[11]

Under the new Pennsylvania Crimes Code, "duress" is a defense to culpability where:

> " . . . the actor engaged in the conduct charged to constitute an offense . . . was coerced to do so by the use of, or threat to use, unlawful force against his person or the person of another, which a person of reasonable firmness in his situation would

11. *Perkins, supra* at 917–918.

have been unable to resist." Act of December 6, 1972, P.L. 1482, No. 334, § 1, effective June 6, 1973, 18 Pa. C.S. § 309(a).

If in fact a person is acting under duress or coercion, this provision, as under prior law, provides a defense. We can find no reason to employ a fiction which is without basis today. To do so would be to abort truth and to subvert the basic purposes of the adjudicative process. Thus, the issue for the trier of fact to resolve was whether Sheila Santiago was acting of her own volition or whether, in fact, she was being coerced by her husband or any other person in her participation in this criminal activity. It is clear, under the facts of this case, that her role was volitional. The testimony indicated that she threw twenty-five packets of heroin out of the window in an attempt to conceal this evidence from the police who were entering. She also was the first one who responded to the knocks of the police and attempted to delay their entrance. The record is barren of any indication that these acts were inspired us a result of the direction and control of a third party. To permit one engaged in criminal activity to avoid criminal responsibility by hiding behind the marital bond serves no policy and only provides the opportunity for one to unjustifiably avoid punishment for criminal acts.

The Order of the Superior Court vacating sentences and remanding for resentencing to the Court of Common Pleas is reversed. The judgment of sentence of the trial court is reinstated and affirmed.

ROBERTS, J., filed a concurring opinion in which MANDERINO, J., joins.

ROBERTS, Justice (concurring).

I join in the Opinion of the Court, but desire to explain my reasons for agreeing with the Court's construction of section 39(a) of the Controlled Substance, Drug,

Device, and Cosmetic Act of 1972.* That section provides in pertinent part:

"In any case not yet final if the offense is similar to one set out in this act, the penalties under this act apply if they are less than those under prior law."

The Superior Court construed this provision to mean that one convicted under the old act is to be sentenced under the provision of the new act whose *elements* are similar to the *elements* of the crime of which he was convicted. We construe the requirement of similarity to refer to the conduct which constituted the offense, rather than the elements of the crime.

The reasons for adopting this construction rather than that chosen by the Superior Court are ably stated by the Commonwealth in its brief:

"[Section 39(a)] took account of the fact that the legislature had reassessed the gravity of the various drug offenses in drafting the Act of 1972, upgrading the penalties for certain offenses, downgrading the penalties for others. Obviously, the legislature wished its new wisdom to have as broad an application as possible, i. e., to apply to as many cases as possible—not only to those cases which would arise after the effective date of the new Act but also to those pending on that date. This understandable wish of the legislature could not be fully realized because of constitutional prohibitions against increasing the penalty for a crime after its commission. In order to attain as much of its objective as could be achieved without running afoul of the proscription of *ex post facto* punishments, the legislature mandated by way of Section 39(a) that wherever the defendant's crime was one whose penalty had been reduced under the new Act, the defendant should receive the benefit of the new lenient policy. Whether

* Act of April 14, 1972, P.L. 233, § 39(a), 35 P.S. § 780–139(a) (Supp.1974).

a given defendant in a pending case is to be the benefi-ciary of the award of leniency must therefore depend upon whether the acts committed by the defendant were of a class which the legislature had determined should be punished with less severity than under the old Act. For if the defendant was convicted of acts as to which the legislature had chosen to *increase* the sanc-tion in the new Act, to bestow upon that defendant a lesser punishment than that fixed by the prior law would directly contravene the new intent of the legisla-ture.

"In accordance with the foregoing analysis, the ap-propriate means for determining if a pending prosecu-tion is controlled by the new Act is to first decide which section of the new Act best describes the acts committed by the defendant for which he was convict-ed. The approach differs from that undertaken by the Superior Court in that it focuses upon the conduct of the defendant as opposed to merely comparing the la-bels assigned offenses in the old and new Acts. The virtue of the recommended approach is that it enhan-ces the likelihood that the punishment imposed will be more closely correlated to the legislature's current judgment as to the gravity of the defendant's crime."

MANDERINO, J., joins in this concurring opinion.